No. 19,476.

MAY T. SPINDEN, as Administratrix, etc., *Appellee,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

1. FEDERAL EMPLOYER'S LIABILITY ACT—*Defense of Assumption of Risk.* In an action brought under the federal employer's liability act it is error to instruct that the defense of assumption of risk, with respect to a particular task, can only be established by showing that its danger was so glaring that a person of ordinary prudence would not have attempted it.

2. SAME—*Repairing Track Suspended Over Washout—Findings Held to Exonerate Defendant.* An employee of a railroad company lost his life by falling from a track which hung suspended over a washout for a distance of some ninety feet, while assisting in preparations for its repair. In an action by his administratrix, charging the company with neglect in several respects, the jury returned a verdict for the plaintiff, but in reply to a question requiring them to state the particular negligence that caused the death they answered that it was the failure to give the decedent proper instructions. The only neglect pleaded in this regard was the omission to instruct the decedent how to walk on the ties—to step upon

them close to the rail.  Specific findings were made that the foreman, after examining the bridge, stated in the presence of the decedent that the ties were unsafe to walk upon; that he warned the workmen to plank the ties, as they were unsafe; that he directed them to do this by pushing the planks ahead of them on the rail, then turning them over on the ties, one on each side of the rail.  *Held,* that the findings require a judgment for the defendant.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge.  Opinion filed May 8, 1915.  Reversed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* and *Harlow Hurley,* all of Topeka, for the appellant.

*Fred Stanley, Claude C. Stanley,* and *Benjamin F. Hegler,* all of Wichita, for the appellee.

The opinion of the court was delivered by

MASON, J.:  W. J. Spinden, an employee of the Atchison, Topeka & Santa Fe Railway Company, lost his life while assisting in restoring the track after a washout. His widow was appointed administratrix, and brought an action against the company, alleging his death to have been due to its negligence.  She recovered a judgment, from which the defendant appeals.

The defendant contended, among other matters, that no recovery could be had because Spinden had assumed the risk of the work at which he was employed at the time of his death.  The court instructed the jury in substance that assumption of risk as applied to the immediate task in which the decedent was engaged was not a defense unless the work involved danger which was so glaring that an ordinarily prudent man would not have undertaken it.  The instruction on this point read:

"If the defendant ordered the deceased to plank the track, and the danger in doing so was not so glaring but what an ordinarily prudent man in the exercise of ordinary care would have attempted to do it, and if the

deceased proceeded with reasonable care in doing the work, then you are instructed that he could not be charged with contributory negligence or with an assumption of the risk incident to doing the work; but if the danger incident to doing the work was so glaring that an ordinarily prudent man in the exercise of ordinary care would not have attempted to perform the work, and he did attempt to perform the work, then you are instructed that his attempt to perform the work under such conditions constituted an assumption of the risk."

In this jurisdiction the question whether an employee acted with ordinary prudence is not made a test of his having assumed a risk, even where the danger results from his employer's negligence. (*Railway Co. v. Loosley,* 76 Kan. 103, 114, 90 Pac. 990; *Barker v. Railway Co.,* 94 Kan. 176, 146 Pac. 358.) And that is the usual rule where contributory negligence and assumption of risk are regarded as separate defenses. (Note, 21 L. R. A., n. s., 138.) This action, however, is brought under the federal employers' liability act. (Part 1, 35 U. S. Stat. at Large, ch. 149, 4 U. S. Comp. Stat. 1913, §§ 8657-8665.) The matter is therefore controlled by the decisions of the United States supreme court, which determine that this statute makes assumption of risk a distinct and complete defense, and that it may exist without chances being taken that an ordinarily prudent person would not incur. (*Seaboard Air Line v. Horton,* 233 U. S. 492, 503, 504.) The question of the attitude of a person of ordinary prudence enters into the matter in two ways. The employee is not regarded as assuming unknown or unappreciated risks arising from his employer's neglect, unless they are so obvious that an ordinarily prudent person would observe and appreciate them. (*Seaboard Air Line v. Horton,* supra, 504; *Gila Valley Ry. Co. v. Hall,* 232 U. S. 94, 102.) And where a promise of reparation is made the employee who relies upon it is said not to assume the risk "unless at least the danger be so imminent that no ordinarily prudent man under the circumstances would rely upon such

promise." (*Seaboard Air Line v. Horton*, 233 U. S.
492, 505.)   In *Schlemmer v. Buffalo, Rochester, &c. Ry.*,
205 U. S. 1, arising under the safety appliance act, the
court disagreed in a matter growing out of the relation
between contributory negligence and assumed risk.  But
in an opinion to which there was no dissent, upon a
second review of the same case, it was said:

"In the absence of statute taking away the defense,
or such obvious dangers that no ordinarily prudent
person would incur them, an employee is held to assume
the risk of the ordinary dangers of the occupation into
which he is about to enter, and also those risks and
dangers which are known or are so plainly observable
that the employee may be presumed to know of them."
(*Schlemmer v. Buffalo &c. Ry. Co.*, 220 U. S. 590, 596.)

Spinden had been at work for six years in the bridge
and building department of the railroad company, but
there was evidence that he had been out but twice
before to help repair washouts, and that in neither case
were the conditions similar to those here presented.
This washout took place at the south end of a bridge
crossing a stream running east and west.  Two bents
of the bridge were carried away, and the fill approach-
ing it was washed out for some distance, so that the
track hung suspended over running water for a space
of about ninety feet, sagging five or six feet, the west
side being eight or ten inches lower than the other.
The repair crew reached the place between three and
four o'clock in the morning.  A pile driver was pushed
by an engine to within 100 or 150 feet of the south end
of the washout.  An electric headlight was trained on
the track and bridge.  The general foreman of the
bridge and building department was in charge of the
work.  He crossed the suspended track and returned,
reporting that the ties were unsafe to walk upon and
that it would be necessary to plank them.  He directed
this to be done.  The method of accomplishing it was
as follows:  Two men brought a two-by-ten plank,
about eighteen feet long, to the end of the washout.

The one ahead placed his end of the plank on the east rail; the other pushed it out along the rail to its full length, and turned it over upon the ties between the rails; a second plank was then pushed out in the same way, and turned over upon the ends of the ties outside of the rail, so that the rail had a plank on each side; this process was to be repeated until the entire suspended track was planked, the workmen walking upon the planks already laid as they carried out each new one. Two planks were laid in this manner, one on the inside and the other on the outside of the east rail. Spinden then helped to lay a third. A witness for the plaintiff testified that he and Spinden then carried out a fourth plank; that he laid his end down; that Spinden was standing at the time on the other plank, and told him to shove the last one to him a little bit, which he did. In some way, not clearly shown, Spinden fell from the track and was drowned. The same witness said that Spinden was not off the plank at all so far as he saw, and that he fell through the track a little back (that is, south, or toward the shore side) of the outer end of the plank on which he had been standing, where a tie was afterwards found to be missing. The theory of the plaintiff is that he fell through the track at this place, either because he stepped on a tie too loose to bear his weight, or because the tie had already fallen and he did not know it.

The petition set out four acts or omissions of the defendant relied upon as constituting negligence, namely: (1) The act of the foreman in ordering Spinden to go upon the track, knowing it to be in a dangerous condition because of the insecure manner in which the ties were fastened to the rails. (2) The failure to provide sufficient light, due to allowing the headlight to get out of order, and neglect to provide sufficient mechanism for directing it. (3) The use of ties so decayed that the weight of a man upon them would serve to pull them loose from the rails. (4) The failure to

give Spinden certain instructions necessary for his safety.

Nothing need be determined as to the legal sufficiency of the first and third grounds, for the jury eliminated these, as well as the second ground, by returning the following answer to a question requiring them to state what particular negligence of the defendant caused Spinden's death:

"Lack of caution. That said track could be made more secure, and that said foreman, with the experience of 38 years, neglected to give proper instruction to an inexperienced man in repairing washouts."

The specific allegations of the petition with regard to the fourth ground of negligence were that the representatives of the defendant who were in charge of the work failed to instruct Spinden how to walk upon the rails and ties over the washout, and failed to instruct him to walk close to the place where the tie was attached to the rail, which was alleged to be a safer method customarily employed in walking across such places by men experienced in bridge work. No complaint was made in the pleading of any omission to instruct him or warn him in any other particular.

The jury found in answer to special questions that Spinden with the other workmen was engaged in placing planks along the track for the purpose of making it safe for them to walk over the track while engaged in making the necessary repairs; that the foreman gave instructions to the men to lay the planks down on the sagging track by pushing them ahead of them on the rail and then turning them over on the ties; that this direction was given "to make it more safe"; that the foreman stated in the presence of Spinden and others that the ties were unsafe to walk on, or words to that effect. To the question "What, if any, warning did foreman McCann give with reference to the unsafe condition of the ties?" the jury answered: "To plank the ties, as they were unsafe."

It thus appears that while the foreman did not instruct Spinden to walk upon the ties by stepping upon them near the rail, he went further than this, warned the workmen that the ties were unsafe to walk on at all, and directed that the work should be done in such a manner as entirely to avoid the need of stepping upon them. If therefore he failed to give any instruction or warning that was necessary for the protection of the men, it must have been with reference to some matter not covered by the pleading and consequently not available as a basis for fixing liability upon the defendant.

The petition alleged that Spinden met his death by the sudden giving way of a tie upon which he was standing. If so, the findings indicate that he stood upon it unnecessarily, and in spite of a warning that it was unsafe. But neither assumed risk nor contributory negligence need enter into the matter, for the jury found by fair implication that the defendant was not negligent in respect to the first three grounds alleged, and specifically to the same effect with regard to the fourth, the only other ground pleaded.

The judgment is reversed and the cause remanded with directions to render judgment for the defendant.