No. 21,417.

O. H. BLACK, *Appellee*, v. THE WICHITA UNION TERMINAL RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Personal Injuries—Damages—Written Release and Satisfaction—Oral Promises.* Where the undisputed evidence and the special findings of the jury show that a written contract for the settlement, release and satisfaction of a claim for damages was executed by the claimant with full knowledge and understanding that the question of his future employment could not be considered in negotiating and effecting the contract of settlement, an oral promise of an agent of the wrongdoer assuring the claimant of future employment, which promise was given to induce claimant to make the contract, but which was not kept nor intended to be kept, is insufficient to vitiate the contract of settlement.

Appeal from Sedgwick district court, division No. 1; RICHARD E. BIRD, judge. Opinion filed July 6, 1918. Reversed.

*R. R. Vermilion* and *W. F. Lilleston,* both of Wichita, for the appellant.

*George W. Adams,* and *John W. Adams,* both of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff, an employee of the defendant, was injured by falling down a baggage elevator shaft in the defendant's union railway depot at Wichita, and brought this action for damages. Defendant's answer, among other matters, pleaded a settlement and release, and the payment of $342.50 to plaintiff in full satisfaction thereof. Plaintiff's reply alleged that defendant's physician, who had the sole care and treatment of plaintiff for his injuries, prior to and about the time of the settlement said to plaintiff:

"You are now able to go to work; the company will give you some light work to start out with; your injuries are not permanent, and you are now ready to go to work."

Plaintiff's reply further alleged that defendant's baggage foreman urged plaintiff to go back to work:

"You . . . can . . . commence work at any time . . . before you go to work you will have to sign a release, as the company will not take you back until you sign a release . . . I have full authority from the company to employ and discharge all employees in the baggage department, and I say to you, that as soon as you sign a release to the company, I will put you to work and give you as light a job as I can to start with."

Plaintiff's reply further alleged that the statements of defendant's physician and the baggage foreman were intentionally made for the purpose of securing the plaintiff's signature to the release; that the statements made to plaintiff by the physician were false and untrue; that at the time of the making of such statements, the plaintiff was not able to work on the job at the union station; that he had not recovered from the injuries; that his injuries were not temporary, but were permanent; that the plaintiff had full confidence in the veracity of each statement; that plaintiff would not have signed said release or purported release if he had known that he was permanently injured; and that the said purported release is void and not binding on this plaintiff.

The release recited that—

"No promises . . . have been made to me or in my behalf . . . to execute it, and that before signing it I fully informed myself of its contents and executed it with full knowledge thereof . . . I have read the foregoing release and fully understand it."

The defendant's demurrer to plaintiff's evidence was overruled, and the cause was submitted to a jury, which rendered a verdict for plaintiff, and answered some special questions:

"2. Do you find that the plaintiff was permanently injured? Ans. No.

"3. Did Dr. Walker state to the plaintiff, before plaintiff signed the release introduced in evidence, that he had no permanent injuries? Ans. Yes.

"4. If you answer the foregoing question in the affirmative, do you find that the plaintiff signed the release introduced in evidence relying upon the statements of Dr. Walker? Ans. Yes.

"5. Did the defendant's agent, Shreave, before plaintiff signed the release introduced in evidence, agree with the plaintiff to give him employment after he would sign the release introduced in evidence? Ans. Yes.

"6. If you answer the foregoing question in the affirmative, do you find from the evidence that the plaintiff signed such release relying upon the statements of the defendant's agent, Shreave? Ans. Yes.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"3. (a) Do you find that before plaintiff signed the release which has been introduced in evidence, the witness, W. F. Lilleston [attorney for defendant], told plaintiff, in substance, that the question of his future employment could not be considered in effecting a settlement and executing the release? Ans. Yes.

"4. (a) Do you find that before plaintiff signed the release, which has been introduced in evidence, he read the same over? Ans. Yes.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"6. (a) If you find that the release introduced in evidence was procured by fraud, please state in what such fraud consisted? Ans. In the promise of Bert Shreave to put plaintiff back to work and failed to do so.

"7. (a) If you find that the release introduced in evidence was procured by fraud, please state what person or persons practiced such fraud. Ans. Bert Shreave."

One of defendant's chief contentions on appeal is that defendant was entitled to judgment on the jury's special findings. If the latter contention is correct, the other errors assigned will need no consideration.

The fraud relied upon to vitiate the settlement, release and satisfaction was that alleged to have been practiced upon plaintiff by the company's physician and by its baggage foreman. As to the physician, the jury's special findings, Nos. 2, 6 (a) and 7 (a), exonerate him. The finding that the fraud was that of the baggage foreman exculpates the physician. (*Williams v. Railway Co.*, 100 Kan. 336, syl. ¶ 1, 164 Pac. 260.)

Black v. Railway Co.

Notwithstanding the fraud of the foreman—in the promise of the latter "to put the plaintiff back to work and failed to do so"—the recitals of the release that no promises had been made to him to induce him to sign it, that he had informed himself and understood it before he did sign it, and the corresponding special finding of the jury, No. 3 (a), are a complete refutation of plaintiff's plea of fraud; and the special findings, Nos. 6 (a) and 7 (a), are insufficient as a matter of law to establish fraud or to vitiate the settlement in view of the other findings of the jury. (*Railway Co. v. Vanordstrand,* 67 Kan. 386, syl. ¶¶ 2, 3, 73 Pac. 113; *Railway Co. v. Coltrane,* 80 Kan. 317, 102 Pac. 835; *Railway Co. v. Roth,* 80 Kan. 752, 104 Pac. 849; *Hickman v.-Richardson,* 92 Kan. 716, 720, 142 Pac. 964; *Adams v. Railway Co.,* 93 Kan. 475, syl. ¶ 2, 144 Pac. 999; *Spinden v. Railway Co.,* 95 Kan. 474, syl. ¶ 2, 148 Pac. 747; *Pullin v. Railway Co.,* 96 Kan. 165, syl. ¶ 2, 150 Pac. 604; *Case v. Yoakum,* 99 Kan. 253, 256, 161 Pac. 642.)

The written contract of settlement was found by the jury to have been knowingly and understandingly made by the plaintiff without fraud by the physician. The jury found that defendant's attorney reminded the plaintiff that the question of his future employment could not be considered in the making of the settlement and release, and the proof was undisputed and indisputable that plaintiff understood that matter when the contract of settlement was effected. These controlling facts preclude all consideration of the oral understanding between the baggage foreman and the plaintiff as to his future employment. Judgment for defendant on the special findings must be ordered, and the judgment will be reversed with instructions to that effect.