300

## No. 29,278.

W. K. STOCK, *Appellee*, v. CHARLES D. SCOTT, W. H. DAVIS and H. T. WHITAKER, *Appellants*.

(295 Pac. 638.)

Opinion filed February 7, 1931.

*Fred S. Jackson, Hugh T. Fisher* and *Robert Stone,* all of Topeka, for appellant W. H. Davis.

*J. J. Schenck, Clayton Kline* and *C. P. Schenck,* all of Topeka, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action brought by W. K. Stock against

Charles D. Scott, W. H. Davis and H. T. Whitaker to recover damages for fraud perpetrated on him by defendants Scott and Davis and others who, as he alleges, acted by, through and for each other and conspiring together, induced him by false representations and misrepresentations as to the financial condition and earnings of the Scott Weighing Machine Co., a corporation doing business in Topeka, Kan., to purchase $10,000 of preferred stock in said company, which company was at the time insolvent, and the stock was worthless. A verdict and judgment thereon were rendered in favor of the plaintiff for $12,877.83 against defendants Scott and Davis. No service was had upon Whitaker, and defendant Davis appeals from that judgment.

The petition alleges the making of many false and fraudulent representations by the defendants to the plaintiff to induce him to purchase stock in the weighing machine company, among which were that it was solvent and had no liabilities except for running expenses. That it had assets of more than two hundred thousand dollars. That the company was paying dividends of more than 10 per cent per annum on the common stock out of its net earnings. That it had more than $70,000 of treasury stock, and owned valuable patents under which it manufactured its scales. That it was earning large dividends on all of its stock, common and preferred, that it was unable to manufacture scales and weighing machines to supply the demand. That the stock, both common and preferred, had increased in value and was worth much more than par, and that the company was paying 8 per cent dividends on all its preferred stock out of its net earnings, and further alleged that "said defendants, for the further purpose of carrying out their fraudulent scheme and conspiracy to cheat and defraud this plaintiff, paid to this plaintiff two per cent on the preferred stock then owned by this plaintiff, and which had theretofore been issued to him by said defendants, and stated to this plaintiff that the two per cent was a quarterly payment of dividends which said corporation was then paying and had been paying out of the net earnings of said corporation on all of the preferred stock which had been issued by said corporation." These and other similar representations were followed by allegations that such representations were false and fraudulent and made for the purpose of inducing plaintiff to purchase more stock.

The answer of Davis admitted his connection with the company

as a stockholder and director and a part of the time as president, and generally and specifically denied all other allegations of the petition. It also alleged plaintiff had from near the beginning been a stockholder and at one time was named a director and attended a meeting of directors.

In addition to the general verdict in favor of the plaintiff the jury answered a special question submitted, which question and answer are as follows:

"If you find for the plaintiff and against the defendant Davis, state upon what representation or representations made by the defendant Davis you base your verdict. A. On the representation made to Mr. Stock that the business was one of the best in the city; that he had invested $6,000 of his own money, and that anything that Mr. Scott told him in regard to the company was all right."

The defendant Davis moved the court for judgment on the answer to the special question notwithstanding the general verdict, which motion was overruled, as was also his motion for a new trial.

The first and most serious question presented here for review is the sufficiency of this answer to sustain the judgment that the defendant Davis made false and fraudulent representations to the plaintiff to induce him to purchase the stock. Both parties agree that the answer is capable of being divided into three parts or consisting of three items in the one answer, viz.: (1) That the business was one of the best in the city; (2) that he had invested $6,000 of his own money; and (3) that anything that Mr. Scott told him in regard to the company was all right.

In response to the question asked, the jury found these were the false and fraudulent representations made by defendant Davis on which the verdict was based. Each part of the answer that is compound in its elements and capable of being separated may be considered as a complete answer in itself, and in that sense it may properly be said in this case there were in the judgment of the jury three false and fraudulent representations made by defendant Davis to induce the plaintiff to purchase stock in the company, and that their verdict was based on those three representations. It would not be necessary that all three of them be supported by sufficient evidence. One or more of them could drop out, and as long as one of the answers was supported by the evidence and would constitute a legal basis for the verdict it would be sufficient.

The foregoing recitation of the allegations of the petition shows

there were many alleged misrepresentations, but if we follow the recognized rule all others are eliminated by the action of the jury in naming only three on which their verdict is based.

"The rule stated in the case of *Tecza v. Sulzberger & Sons Co.,* 92 Kan. 97, 98, 140 Pac. 105, that by a specific finding of negligence, made in response to a request to state what the negligence of the defendant was which caused injury to the plaintiff, the jury must be deemed to say their verdict is not based upon any other form of negligence, applied." (*Adams v. Railway Co.,* 93 Kan. 475, syl. ¶ 2, 144 Pac. 999.)

"Where a recovery is sought by reason of several negligent acts of the defendant, and the jury in answer to a special question finds that the negligence upon which they base their verdict is a certain single act of the defendant, the finding in effect acquits the defendant of every charge of negligence alleged in the petition or mentioned in the evidence except the one specifically designated in the finding." (*Roberts v. Railway Co.,* 98 Kan. 705, syl., 161 Pac. 590.)

"Numerous grounds of negligence on the part of Commissioner Stevens were alleged by the plaintiff, and some evidence was introduced on some of these grounds, but the above findings eliminate all except the one count of negligence found by the jury." (*City of Topeka v. Independence Indemnity Co.,* 130 Kan. 650, 654, 287 Pac. 708.)

There is no difference between the application of the rule to many charges of false representation and many items of negligence. So by this answer the jury has reduced all the charges of false representations to three, and only three, and following the rule above announced all other allegations of false representations and proof of same are eliminated.

It is not contended that the second part of the answer is of any consequence or force, for it is admitted that the defendant Davis had invested $6,000 of his own money in the company. Although the statement that he had invested that amount in the company would go well toward inspiring confidence in the company on the part of others, yet only those representations which were false as well as persuading and inducing can make the defendant liable. This representation, from all the evidence, was not false but absolutely true, and therefore cannot constitute a basis for the general verdict. However, we think it can be dropped out without interfering with the force and effect of the other two answers, considered either separately or together.

For an answer to a special question to fully sustain a general verdict, and be consistent with it, it must be within the pleadings and

supported by the evidence. If the answer states a fact or representation not alleged in the petition it will not sustain the verdict.

"The special verdict must conform to the pleadings. The word 'facts' is used in this section in the same sense, and refers to the same things, as when used in section 87 of the code, which declares that a 'petition must contain a statement of the *facts* constituting the cause of action in ordinary and concise language, without repetition.' There are in every cause of action certain essential, substantive facts, certain elements, so to speak. Every pleader knows this when he prepares a petition. The omission of any one of these elements renders the petition defective. The failure to prove one defeats the cause of action. Now these essential elemental facts are the ones the special verdict must find, no more, no less." (*National Bank v. Peck*, 8 Kan. 660, 666.)

Are these two representations mentioned in the answer stated in the pleadings among the false and fraudulent representations alleged to have been made by the defendant, and if they are would the petition with these as the only false and fraudulent representations state facts sufficient to constitute a cause of action? We fail to find any allegations very closely bordering upon the substance of these answers or indicating that defendant represented to the plaintiff that the business (of this company) was one of the best in the city (Topeka), and that anything Mr. Scott told him (the plaintiff) in regard to the company was all right. We do find in the petition allegations or representations to the effect that the company was unable to manufacture scales and weighing machines to supply the demand, that it had assets of more than $200,000 and that it was paying 8 and 10 per cent dividends out of its net earnings. All these allegations were representations or statements of facts that might readily be shown to be true or untrue. One or more of these representations might describe a business that would if true make it one of the best in the city. But whether it was one of the best in the city would be a matter of opinion upon which people would naturally differ. Notwithstanding the prosperous and optimistic word picture contained in the allegations, we have serious doubt of its being substantially equivalent to a statement that the business was one of the best in the city.

Our attention is directed by both parties to the relation of these parties, plaintiff and defendant, which is a matter properly for consideration in this connection. Appellant urges that both being stockholders in the company they were upon equal footing, while appellee contends that plaintiff being a farmer unfamiliar with

business was not on equal footing with defendant Davis, who was a man of business experience, and as director and president of the company had a superior opportunity of knowing the condition of the affairs of the company. The trial court refused to give the instruction requested by appellant as to their being on equal footing, and we are inclined to think the court was right. They were not exactly on equal footing as to business experience, but they were on an equal footing as to this business as far as we are informed, which was a mere speculation as to the financing and putting across of a patent right which depended almost entirely upon the future. The ordinarily good and conservative judgment of the farmer in patent right developments has generally been found by observation to be superior to that of the business man.

The evidence shows that what the plaintiff wanted of the defendant was his opinion, and the jury must have been impressed with that situation, for the first answer indicates that what the defendant gave the plaintiff was a mere opinion, not a statement of any material facts, and then recommended Mr. Scott. If the first answer is only an opinion and not a representation of material facts, it will not support the verdict and will be inconsistent with it.

"Rule followed that fraudulent representations to constitute fraud must relate to some material, past or existing fact." (*Federal Agency Investment Co. v. Holm,* 123 Kan. 82, syl. ¶ 2, 254 Pac. 391.)

It was held in *Berridge v. O'Flanagan,* 122 Kan. 74, 251 Pac. 175, that—

". . . statements as to the value of real estate by agents endeavoring to sell or exchange the same are ordinarily regarded as expressions of opinion, and not representations of fact which will justify an action either for rescission or for deceit. (*Subke v. Gonder,* 97 Kan. 414, 155 Pac. 793; *Else v. Freeman,* 72 Kan. 666, 83 Pac. 409; 23 C. J. 199; 26 C. J. 1215.)" (p. 76.)

Of course, some opinions are properly regarded as representations of fact and when so regarded are matters wholly for the jury, but the distinction is usually where they are coupled with representations of fact and relate to such matters as are susceptible of exact knowledge. There was evidence of statements of the defendant as to facts, dividends, sales, etc., but the jury by this answer does not base its verdict upon such. They strip it of everything except the character of the business as compared with other business in the city. And following the general rule it seems to be only an expres-

sion of opinion and not a representation of fact susceptible of exact knowledge.

"Ordinarily an intending subscriber or purchaser has no right to rely upon a statement which by reason either of its form or subject matter amounts merely to an expression of opinion or belief, and such a statement does not amount to such a representation of fact as will be ground either for an action for damages or for rescission. But if expressions of opinion are coupled with a representation of fact, or if a representation known to be false, and not equally within the means of knowledge of the other party, relates to a matter which is susceptible of exact knowledge, and is made with intent that it shall be acted upon, and it is in fact relied upon as intended, and deceives, it is to be regarded as a representation of fact, even though it may be made in the form of an opinion. And the expression of an opinion may be fraud and ground for rescission if falsely made, with intent to deceive, and if it does in fact deceive, if there is a known relation of trust and confidence or the parties are not on equal terms, although not where the opinion relates to a matter equally open to both parties." (14 C. J. 607.)

In a way the answer is somewhat similar to an expression of worth or value except it is only by comparison with other business, and the general rule as to value is that such expression is only an opinion.

"Misrepresentations as to value cannot ordinarily constitute fraud because they are generally to be regarded as mere expressions of opinion or 'trader's talk' involving a matter of judgment and estimation as to which men may differ. It has been held that such representations may under certain circumstances be nonactionable even when made with intent to deceive and with knowledge of their falsity." (26 C. J. 1215.)

The real test as stated in the Peck case, *supra*, is whether the finding is one of the allegations of the petition, and if it is would it alone as a false representation state facts sufficient to constitute a cause of action against the defendant for damages. We think not. And in reaching this conclusion we have had fully in mind the rule stated in *Morrow v. Bonebrake*, 84 Kan. 724, 115 Pac. 585, as follows:

"Where a question of inconsistency arises between findings made in answer to special questions and a general verdict nothing will be presumed in aid of special findings while every reasonable presumption will be indulged in favor of the general verdict." (Syl. ¶ 3.)

We have also taken into consideration, as suggested by appellant, the ruling of this court in a case involving a similar matter concerning the same company and one of the parties to this action, which is as follows:

"Charles D. Scott was the secretary and treasurer of the Scott Weighing Machine Company, and the evidence shows he was selling the stock of the Scott Weighing Machine Company with the knowledge and consent of W. H. Davis, appellant herein, who was, during most of the time covered by the evidence in this case, the president of the said company, although it is shown Scott may not have been selling the stock under the direct supervision and direction of the president, but with his full knowledge and consent." (*Davis v. Rolley,* 124 Kan. 132, 133, 257 Pac. 746.)

Appellant cites Kansas cases where representations made were held to be more than mere expressions of opinion where they relate to quantity or material facts. There was evidence in this case which would exactly meet that description, but by the finding of the jury those representations are not the basis of the general verdict.

In the case of *Abmeyer v. Bank,* 76 Kan. 877, 92 Pac. 1109, representations were made as to the quantity of corn in a field. A demurrer to the evidence was sustained and on review all the evidence was before the court for consideration, and it was held to be a question for the jury. A very similar question was involved in the case of *Disney v. Lang,* 90 Kan. 309, 133 Pac. 572, where the representation was as to the acres occupied as railroad right of way, and it was held to be a question of fact and not a mere opinion.

The decision in the case of *Sweet v. Hentig,* 24 Kan. 497, was based upon the failure to carry out a promise to give credit on a judgment.

In the case of *Murray v. Davies,* 77 Kan. 767, 94 Pac. 283, cited by appellant, the false representations were concerning having good title to land, owning other land referred to, being financially interested in certain banks and that certain attorneys had approved the abstracts of title, all matters of fact capable of exact determination.

Much that has been said about the first answer is applicable to the last. It is not, strictly speaking, a representation within the contemplation of the question. It is not a representation on which the verdict was or could be based. It had to do with the introduction of evidence and the liability of the defendant Davis under certain complicacy for misrepresentations that may have been made by Scott. But it cannot be contended that because Davis said that anything that Mr. Scott told him (the plaintiff) in regard to the company was all right, and that such statement was false, that such false representation would make a complete basis for the general verdict. While it may be in one sense a representation, it does

not meet the test laid down by Justice Brewer in the Peck case, *supra*, either as being covered by the existing pleadings or being such as would constitute a basis for a cause of action. It was an all-important feature in the progress of the trial of the cause, but it was not a representation on which the general verdict was based. Like the first answer, it afforded no support for the general verdict and thus leaves the verdict without any support.

Under the pleadings the verdict must be based upon false and fraudulent representations, and as to defendant Davis the answer eliminates all representations made by him except the three enumerated therein, which are found as matters of law not to be such representations as will support a verdict.

Many authorities are cited by appellee to the effect that one may be liable for the false representations made by the one to whom the defendant referred another. An instruction to the jury on this subject would be pertinent and proper in the trial of the case, but those decisions do not help determine the question of a recommendation of another being a representation on which the verdict could be based.

There is no occasion for considering the other assignments of error.

The judgment is reversed and the cause is remanded with instructions to render judgment for defendant Davis for costs.

HARVEY, J., dissenting.